UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAKIM PAULIN,

                              Plaintiff,

            v.

CITY OF BEACON, *et al.*,

                              Defendants.

No. 17-CV-5105 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Rakim K. Paulin
Cape Vincent, NY
*Pro Se Plaintiff*

Hillary Jacobs Raimondi, Esq.
Traub Lieberman Straus & Shrewsbury LLP
Hawthorne, NY
*Counsel for Defendant City of Beacon*

Seamus Patrick Weir, Esq.
Catania, Mahon, Milligram & Rider
Newburgh, NY
*Counsel for Defendant Richard Sassi*

David Lewis Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendant County of Dutchess*

Corey M. Cohen, Esq.
Furman Kornfeld & Brennan LLP
New York, NY
*Counsel for Defendant Terry D. Horner*

KENNETH M. KARAS, District Judge:

Pro se Plaintiff Rakim K. Paulin ("Plaintiff"), currently incarcerated at Cape Vincent Correctional Facility, brings this Action, pursuant to 42 U.S.C. § 1983, against the County of Dutchess ("Dutchess"), the City of Beacon ("Beacon"), Police Officer Richard Sassi, Jr. ("Sassi"), Terry D. Horner, Esq. ("Horner"), and New York State Appellate Clerk Aprilanne Agostino ("Agostino"). (*See* Am. Compl. (Dkt. No. 60).)[1] Plaintiff alleges that Defendants violated his Due Process rights by failing to turn over exculpatory material in connection with his criminal trial, and by failing to timely perfect the appeal of his conviction. (*See generally id.* at 2.)

Before the Court are Defendants' Motions To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Dutchess Not. of Mot. (Dkt. No. 45); Beacon Not. of Mot. (Dkt. No. 51); Horner Not. of Mot. (Dkt. No. 61); Sassi Not. of Mot. (Dkt. No. 66).) For the following reasons, Defendants' Motions are granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, and are taken as true for the purpose of resolving the instant Motions.

#### 1. Brady Violations

On April 7, 2010, Plaintiff was arrested for possession of heroin, crack cocaine, and marijuana. (Am. Compl. 3.) Plaintiff was convicted by a jury of "Criminal Sale of a Controlled Substance in the Third Degree (Five Counts), Criminal Possession[] of a Controlled Substance in

---

[1] The Court dismissed Defendant Agostino from this Action on grounds of judicial immunity on June 13, 2018. (*See* Order of Service (Dkt. No. 17).)

the Third Degree (Seven Counts), and Criminal Possession of a Controlled Substance in the Fifth Degree (One Count)." (*Id.*) Plaintiff was sentenced to 24 years of incarceration, with five years of post-release supervision. (*Id.*)

During discovery in Plaintiff's criminal trial, he requested: (1) the criminal records for 2005 through 2011 of the confidential informant ("CI") who planned to testify against him; (2) the "police blotter entered by agent Sassi"; (3) the "buy reports"; and (4) Beacon's official Policy on Confidential Informants (the "CI Policy"). (*Id.*) The District Attorney's Office ("DA's Office") disclosed the CI's criminal records from only 1984 through 2004. Additionally, the DA's Office indicated that the requested police blotter "did not exist," and did not turn over the buy reports. (*Id.*)

Plaintiff's trial lasted from March 23, 2011 to April 11, 2011, and he was convicted by a jury. (*Id.*) While incarcerated, Plaintiff filed a FOIL request to retrieve the documents that the DA's Office did not turn over in discovery, but the request was denied. (*Id.* at 4.) Plaintiff appealed the denial in an Article 78 proceeding, and the request was granted. (*Id.*) However, "Respondents" did not comply with the order. (*Id.*) Plaintiff filed a second Article 78 proceeding, and his request was again granted on April 1, 2016. (*Id.*) "Respondents" subsequently released "the buy reports, CI criminal history records, [and the] City of Beacon Policy on confidential informants." (*Id.*) The police blotter "was not received until September 3, 2016." (*Id.*)

In the buy reports, Defendant Sassi allegedly stated that he "observed the CI arriving at [Plaintiff]'s residence through the front door." (*Id.*) However, Plaintiff asserts that his building "did not have a front door," but rather "a basement door." (*Id.*) The police blotter indicated that "someone was banging on [Plaintiff]'s window," and that his landlord reported "a lot of

activities" at Plaintiff's residence.  (*Id.*)  Plaintiff also alleges that Beacon's CI Policy required

that two officers meet with any CI; "however, officer Sassi was meeting the CI alone," in breach

of the CI Policy.  (*Id.*)  Plaintiff asserts that Sassi was subsequently terminated for breaching the

same Policy two years after Plaintiff's trial.  (*Id.*)

On June 15, 2016, the Appellate Division reversed Plaintiff's convictions.  (*Id.* at 5.)  On

October 27, 2016, Plaintiff pled guilty to Possession of a Controlled Substance in the Fifth

Degree, and was sentenced to two years imprisonment, with one year of post-release supervision.

(*Id.*)

### 2.  Delayed Appeal

Plaintiff separately alleges that his appellate counsel, Defendant Horner, "influenced" by

Agostino, violated his Due Process rights "by not entertaining or even considering [P]laintiff's

repeated motion[] and letter requests for a scheduling order," resulting in a five-year delay in the

reversal of his original convictions.  (*Id.* at 10.)

Plaintiff alleges that he "spent over 6 years in jail and prison, suffered humiliation,

anxiety, mental anguish, loss of wages, and loss of opportunity to finish school, and several

expenses relating to litigation and incarceration cost[s]" due to his "excess of imprisonment

time."  (*Id.* at 11.)[2]  Plaintiff "seeks damages for punishment he suffered in excess of the

two[-]year imprisonment he accepted as part of his plea."  (*Id.*)

### B. Procedural Background

Plaintiff initiated this Action on July 6, 2017 against Dutchess, Beacon, Sassi, Agostino,

Horner, and Frank Tasciotti ("Tasciotti") of the Dutchess County Drug Task Force.  (Compl.

---

[2] Plaintiff also alleges that he was "mistreated during his incarceration including severe molestation and abuse[] by prison guards," but has not brought constitutional claims against any prison guards in this Action.  (Am. Compl. 11.)

(Dkt. No. 2).)  His request to proceed in forma pauperis ("IFP") was granted on October 16, 2017.  (Dkt. No. 9.)

On September 20, 2018, Dutchess filed a Motion To Dismiss on behalf of itself and Tasciotti; Beacon filed its Motion To Dismiss the same day.  (Dutchess Not. of Mot.; Dutchess Mem. of Law in Supp. of Mot. ("Dutchess Mem.") (Dkt. No. 48); Dutchess Decl. in Supp. of Mot. ("Dutchess Decl.") (Dkt. No. 47); Beacon Not. of Mot.; Beacon Mem. of Law in Supp. of Mot. ("Beacon Mem.") (Dkt. No. 53); Beacon Decl. in Supp. of Mot. ("Beacon Decl.") (Dkt. No. 52).)  On September 24, 2018, Plaintiff filed the operative Amended Complaint.  (Am. Compl.) The Amended Complaint did not name Tasciotti as a Defendant or include any allegations against him, and Tasciotti was accordingly dismissed from this Action the same day.  (Dkt. (entry for Sept. 24, 2018).)  On September 26, 2018, Horner filed a Motion To Dismiss.  (Horner Not. of Mot.; Horner Mem. in Supp. of Mot. ("Horner Mem.") (Dkt. No. 65); Horner Decl. in Supp. of Mot. ("Horner Decl.") (Dkt. No. 64).)  On September 27, 2018 after originally filing incorrectly, Sassi filed a Motion To Dismiss.  (Sassi Not. of Mot.; Sassi Mem. of Law in Supp. of Mot. ("Sassi Mem.") (Dkt. No. 68); Sassi Decl. in Supp. of Mot. ("Sassi Decl.") (Dkt. No. 67).)  On October 17, 2018, each Defendant filed a supplemental brief addressing the new allegations included in Plaintiff's Amended Complaint.  (Horner Suppl. Mem. of Law ("Horner Suppl. Mem.") (Dkt. No. 79); Dutchess Suppl. Mem. of Law ("Dutchess Suppl. Mem.") (Dkt. No. 80); Beacon Suppl. Mem. of Law ("Beacon Suppl. Mem.") (Dkt. No. 82); Sassi Suppl. Mem. of Law ("Sassi Suppl. Mem.") (Dkt. No. 85).)  On November 26, 2018, Plaintiff filed a response to the Motions.  (Pl.'s Mem. of Law in Opp'n to Mots. ("Pl.'s Mem.") (Dkt. No. 94).) Dutchess filed a reply on December 18, 2018, (Dutchess Reply in Further Supp. of Mot. ("Dutchess Reply") (Dkt. No. 96)), Sassi and Beacon filed replies on December 19, 2018, (Sassi

Reply in Further Supp. of Mot. ("Sassi Reply") (Dkt. No. 98); Beacon Reply in Further Supp. of Mot. ("Beacon Reply") (Dkt. No. 99)), and Horner filed a reply on December 20, 2018, (Horner Reply in Further Supp. of Mot. ("Horner Reply") (Dkt. No. 101)).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that

the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se

litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at

*4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

### B. Analysis

#### 1. Brady Violations

The gravamen of Plaintiff's first claim is that Sassi, Beacon, and Dutchess withheld

exculpatory evidence in his criminal trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963),

and that he was wrongfully convicted as a result. (*See* Am. Compl. 3–5, 9–10.) Beacon argues

that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1944), because Plaintiff

pled guilty to one of the offenses he was charged with after his convictions were reversed, that he

fails to plead municipal liability under *Monell v. Department of Social Services of City of New

York*, 436 U.S. 658 (1979), and that the Complaint fails to state a claim. (Beacon Mem. 8–15.)

Dutchess argues that Plaintiff fails to plead municipal liability under *Monell*, and also that the

Complaint fails to state a claim. (Dutchess Mem. 3–9.) Sassi argues that Plaintiff fails to allege

Sassi's personal involvement in any *Brady* violations, and that Plaintiff fails to state a claim.

(Sassi Mem. 5–12.)

##### a. *Heck v. Humphrey*

In *Heck*, the Supreme Court held that "a state prisoner's claim for damages is not

cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily

imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the

conviction or sentence has previously been invalidated." *Edwards v. Balisok,* 520 U.S. 641, 643

(1997) (quoting *Heck*, 512 U.S. at 487). Moreover, while *Heck* held that the favorable-

termination rule is triggered when a prisoner's success would "necessarily demonstrate the

invalidity of the *conviction*," 512 U.S. at 481–82 (emphasis added), the Supreme Court has since

clarified that *Heck* applies to any challenge to the duration of "confinement" that necessarily implies the invalidity of that confinement, even if that challenge would not implicate the underlying conviction or sentence, *see Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.); *see also Edwards*, 520 U.S. at 648 (finding that a prisoner's claim for money damages alleging that he was deprived of good-time credits without due process necessarily implies the invalidity of the "punishment imposed," meaning the deprivation of the credits). Absent such a showing, a prisoner may only seek relief in the federal courts through a petition for habeas corpus. *See Wilkinson*, 544 U.S. at 81 (holding that habeas corpus is the only remedy available to prisoners seeking to "invalidate the duration of their confinement—either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody"); *see also Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999) ("[W]here the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only § 2254(b) with its exhaustion requirement may be employed."). The Second Circuit "has emphatically and properly confirmed that *Brady*-based § 1983 claims necessarily imply the invalidity of the challenged conviction in the trial (or plea) in which the *Brady* violation occurred." *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014) (citation and italics omitted).

Beacon argues that Plaintiff cannot satisfy the requirement that his criminal proceeding terminated in his favor because he pled guilty to one of the underlying charges after his convictions were reversed. (Beacon Mem. 8–9.) There is some district court precedent for Beacon's position within the Second Circuit. In *Stein v. County of Westchester*, 410 F. Supp. 2d 175 (S.D.N.Y. 2006), a case very similar to this one, the court held the plaintiff's § 1983 claims

based on allegations that prosecutors withheld exculpatory evidence at her criminal trial were

barred by *Heck*, even though her original conviction was reversed, because she ultimately pled

guilty to several of the charged offenses; the court noted the "unavoidable reality that the

Appellate Division did not exonerate [the] plaintiff," but rather vacated the plaintiff's conviction

for *Brady* and other evidentiary violations and ordered a new trial. *Stein*, 410 F. Supp. 2d at 177,

179. Similarly, in *Leka v. City of New York*, No. 04-CV-8784, 2006 WL 2819621 (S.D.N.Y.

Sept. 29, 2006), in determining whether a §1983 claim based on *Brady* violations was time-

barred, the court held that the claim did not accrue when his convictions were reversed based on

*Brady* violations, but after the underlying charges were properly dismissed, because "unlike a

total exoneration, the basis of the granting of [the] [p]laintiff's writ was a failure by the

prosecutor to disclose certain Brady materials, which may or may not have affected the jury's

ultimate decision." *Leka*, 2006 WL 2819621, at * 3.

However, more recently, the Second Circuit held that *Brady*-based §1983 claims are not

barred under such circumstances because "[e]ven when a defendant is retried, a § 1983 suit

concerning the earlier trial could not impeach the new trial's result." *Poventud*, 750 F.3d at 134

(citation omitted); *see also id.* at 137 (holding the plaintiff's § 1983 claim for *Brady* violations

was not barred by *Heck* where the "complaint seeks damages for his time in prison, but excludes

the time that he served pursuant to his unchallenged 2006 guilty plea"). In light of the Second

Circuit's holding in *Poventud*, the Court finds Plaintiff's claims arising out of alleged *Brady*

violations in connection with his original trial are not barred by *Heck*.

### b. Claims Against Sassi

Sassi argues that Plaintiff fails to allege his personal involvement in any *Brady* violations,

and in any event fails to state a claim. (*See generally* Sassi Mem.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Sassi's actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff, at most, alleges that Sassi engaged in misconduct with respect to his investigation of Plaintiff's case and subsequent trial. Specifically, Plaintiff alleges that Sassi testified at his trial, (Am. Compl. 3), that Sassi said in "the buy reports" that Plaintiff had a front door, which Plaintiff appears to suggest is a misrepresentation because Plaintiff had only "a basement door," (*id.* at 4), and that Sassi met with the CI who ultimately testified in Plaintiff's trial alone, rather than with a second officer as required by Beacon's CI Policy, (*see id.*).

A *Brady* violation has three components: "(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must

have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have

ensued." *United States v. Jackson*, 345 F.3d 59, 71 (2d Cir. 2003) (citation omitted). Plaintiff

nowhere alleges facts suggesting that Sassi "suppressed" any exculpatory evidence. Rather, he

alleges that the *DA's Office* withheld evidence that he could have used to impeach Sassi's

credibility. (*See* Pl.'s Mem. 4 (arguing that Plaintiff could have used the buy reports "to impeach

Defendant Sassi's credibility due to multiple inconsistencies therein"); *see also id.* (arguing that

Plaintiff could have used the CI Policy "to impeach Sassi and the alleged informer who [were]

meeting one on one to go over their testimony before . . . Plaintiff's trial").) Although Plaintiff

appears to allege that Sassi *authored* the buy reports and police blotter, he does not allege facts

giving rise to an inference that Sassi was involved in the DA's Office's alleged refusal to turn

them over to Plaintiff during discovery, nor identify any exculpatory facts that Sassi failed to

include in them. *See Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992) ("[T]he

police satisfy their obligations under *Brady* when they turn exculpatory evidence over to the

prosecutors.").

To the extent Plaintiff seeks to base his claim against Sassi on misinformation or

fabricated evidence given to prosecutors, *see Betts v. Shearman*, 751 F.3d 78, 83–84 (2d Cir.

2013) ("When a police officer creates false information likely to influence a jury's decision and

forwards that information to prosecutors, he violates the accused's constitutional right to a fair

trial, and the harm occasioned by such an unconscionable action is redressable in an action for

damages under 42 U.S.C. § 1983."), he has not identified any misstatement with sufficient

specificity for the Court to assess whether the allegedly fabricated evidence is attributable to

Sassi and could have prejudiced Plaintiff at trial, save for his characterization of a basement door

as a front door, *compare Willis v. Rochester Police Dep't*, No. 15-CV-6284, 2018 WL 4637378,

at *9 (W.D.N.Y. Sept. 27, 2018) (dismissing § 1983 *Brady*-based claims because "[e]ven taken as true, it is not clear how that alleged misrepresentation would constitute evidence against [the] [p]laintiff or, consequently, how it would have any impact on a jury's ultimate decision regarding the charges brought against [the] [p]laintiff"), *with Isaac v. City of New York*, No. 16-CV-4729, 2018 WL 5020173, at *12 (E.D.N.Y. Aug. 6, 2018) (holding complaint "which specifically identifies the evidence that [the defendants] allegedly fabricated and transmitted to the prosecutors[] adequately alleges a fair trial claim against those defendants"), *adopted by* 2018 WL 4583481 (E.D.N.Y. Sept. 24, 2018); *see also Hicks v. Marchman*, 719 F. App'x 61, 64 (2d Cir. 2018) (affirming dismissal of *Brady*-based claims where the plaintiff "d[id] not allege facts sufficient to support a conclusion that the existence of the [withheld evidence] should be considered exculpatory").[3] Nor has Plaintiff identified any exculpatory information that Sassi omitted from the police blotter or buy reports. *Cf. Richards v. City of New York*, No. 97-CV-7990, 2003 WL 21036365, at *14 (S.D.N.Y. May 7, 2003) (noting in connection with malicious

---

[3] Plaintiff attached the police blotter to his Amended Complaint. (*See* Am. Compl. Ex. E ("Police Blotter").) In Plaintiff's Memorandum he appears to argue that the blotter contained misstatements because Plaintiff's landlord "did not live at Plaintiff['s] residence[,] [o]r ever witness Plaintiff [sell]ing any illegal drugs," and that Plaintiff "did not know the person in the other blotter report." (Pl.'s Mem. 5.) The first reference to Plaintiff in the blotter is that on February 20, 2010, someone in Plaintiff's building called the police to report that an unknown subject was knocking on her apartment window; later that morning, she called the police again to say the same subject was sitting in a vehicle in front of her residence, and when the police approached the individual, he stated "that he was attempting to locate Rakim Paulin who resides in apartment 1." (*See* Police Blotter.) Then, on March 10, 2010, a police officer received a call from someone who lives in West Nyack, New York (who may be the landlord Plaintiff referred to, although Plaintiff did not specify), in which the person reported a "significant amount of drug activity at" Plaintiff's apartment. (*Id.*) Although each entry identifies the police officers involved in the underlying event, Sassi is not one of the officers listed. Furthermore, even if Plaintiff's landlord gave false information to police officers, a claim of "false accusation . . . by a private citizen to the police," without more, "is insufficient to state a plausible claim that [the citizen] and the arresting officers shared a common goal of violating [the plaintiff's] rights." *Betts*, 751 F.3d at 86.

prosecution claim that an officer's failure to disclose exculpatory eyewitness testimony to the District Attorney's Office supported the inference that police officers withheld material information). Absent any factual allegations that would support an inference that Sassi either withheld evidence or provided false information to prosecutors, Plaintiff fails to state a *Brady*-based claim. Accordingly, Plaintiff's claim against Sassi is dismissed.[4]

### c. *Monell* Liability

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). Therefore, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4)

---

[4] To the extent Plaintiff seeks to assert other constitutional claims against Sassi, the alleged conduct does not establish any constitutional violation. For example, to the extent Plaintiff argues that Sassi's trial testimony included "multiple inconsistencies" and therefore violated his constitutional rights, (Pl.'s Mem. 4), "[w]itnesses, including police officers, are absolutely immune from liability based on false testimony at trial," *Murray v. Guzman*, No. 19-CV-1959, 2019 WL 1745744, at *4 (S.D.N.Y. Apr. 17, 2019) (citation omitted); *see also Horn v. City of New Haven*, No. 18-CV-1502, 2019 WL 3006540, at *4 (D. Conn. July 9, 2019) ("Although the complaint alleges that [the witness] lied during his trial testimony, the law is clear that [the witness] has absolute immunity for his trial testimony." (original alterations omitted) (citing, inter alia, *Rehberg v. Paulk*, 566 U.S. 356, 366–68 (2012))). Additionally, Plaintiff cannot establish a constitutional violation based solely on Sassi's violation of the CI Policy because allegations that a state actor "violated New York regulations or its own policies . . . [are] not actionable under [§] 1983." *Victory v. Pataki*, 632 F. App'x 41, 44 (2d Cir. 2016) (citing *Graziano v. Pataki*, 689 F.3d 110, 116 (2d Cir. 2012), and *Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985)); *see also Bowen v. County of Westchester*, 706 F. Supp. 2d 475, 490 (S.D.N.Y. 2010) ("[E]ven if Defendants violated . . . departmental policy, they did not violate the Constitution."); *Simpkins v. Bellevue Hosp.*, 832 F. Supp. 69, 73 n.2 (S.D.N.Y. 1993) (noting that a state actor's "violation of their own policy would not necessarily give rise to a [constitutional] claim").

damages; and (5) that an official policy of the municipality caused the constitutional injury."

*Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–691).

A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Plaintiff alleges that "policymaking officials from the City of Beacon, and County of Dutchess, including but not limited to the Dutchess County Drug Task Force, acted with deliberate indifference to the constitutional rights of individuals suspected of or charged with criminal activity," and that Beacon and Dutchess "implemented or tolerated plainly inadequate policies, procedures, regulations, practices, customs, training, supervision, and/or discipline concerning the constitutional duty of police investigators to make timely disclosures to the District Attorney and/or the defense of *Brady* Material, to provide truthful information to prosecutors . . . , and to testify truthfully . . . during criminal proceeding[s]." (Am. Compl. 6–7.) Plaintiff further alleges that "[t]he aforesaid policies, procedures, regulation, practices[,] and/or customs (including the failure to properly instruct, train, supervise[,] and/or discipline employees with regard thereto) were implemented or tolerated by policymaking officials" of Beacon and Dutchess. (*Id.* at 7.) Plaintiff also alleges that policymaking officials "had notice of the need to properly instruct, train, supervise[,] and/or discipline employees" with regard to constitutional violations based on, inter alia, "numerous credible allegations, many substantiated by judicial decisions, that police officers had wrongfully withheld, lost, or destroyed evidence," "numerous

civil lawsuits, some of which resulted in substantial settlements, alleging that police had

falsified, exaggerated[,] or withheld evidence," and "[j]udicial decisions directly criticizing the

City of Beacon, County of Dutchess, and Dutchess County Drug Task Force, for failing to train

and supervise officers in their *Brady* disclosure policies."  (*Id.* at 7–8.)

Plaintiff's allegations are precisely the sort of "boilerplate" assertions that courts find

insufficient to establish municipal liability.  *Araujo v. City of New York*, No. 08-CV-3715, 2010

WL 1049583, at *9 (E.D.N.Y. Mar. 19, 2010) (dismissing failure to train claim where a plaintiff

alleged "no facts to indicate any deliberate choice by municipal policymakers to engage in

unconstitutional conduct"); *see also Shaheed v. City of New York*, No. 14-CV-7424, 2017 WL

3055040, at *8 (S.D.N.Y. July 17, 2017) (granting motion to dismiss where the amended

complaint "makes no concrete allegations as to the deliberate indifference of any policymaking

official"); *Smalls v. City of New York*, 181 F. Supp. 3d 178, 189–90 (E.D.N.Y. 2016) (dismissing

*Brady*-based and malicious prosecution claims against municipality because the plaintiff

"assert[ed] only conclusory allegations that the New York City Police Department has a

widespread, undefined custom of trumping up charges and making unlawful arrests to generate

'activity' for officers," but "set[] forth no other examples of this practice, and offers no factual

support beyond his own arrest"); *Lowery v. City of New York*, No. 10-CV-7284, 2014 WL

2567104, at *6 (S.D.N.Y. June 6, 2014) (dismissing a pro se plaintiff's *Monell* claim for failing

to allege either an underlying violation or sufficient facts beyond "boilerplate, conclusory

allegations"); *Maynard v. City of New York*, No. 13-CV-3412, 2013 WL 6667681, at *4

(S.D.N.Y. Dec. 17, 2013)  ("Conclusory allegations that there was such a policy or custom,

without identifying or alleging supporting facts, is insufficient to state a claim."); *Triano v. Town

of Harrison*, 895 F. Supp. 2d 526, 539–40 (S.D.N.Y. 2012) (dismissing *Monell* claim where the

plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program"); *Bradley v. City of New York*, No. 08-CV-l106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The [c]omplaint's conclusory, boilerplate language—that the [c]ity failed to adequately train, discipline, and supervise employees and failed to promulgate and put into effect appropriate srules and regulations applicable to the duties and behavior of its employees—is insufficient to raise an inference of the existence of a custom or policy." (citation, alterations, and quotation marks omitted)).

Although Plaintiff alleges that policymakers "tolerated" a policy or custom of *Brady* violations, he provides no examples beyond what occurred in his own case, which is insufficient. *See Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citation omitted)); *Murray v. Admin. for Children's Servs.*, 476 F. Supp. 2d 436, 442 (S.D.N.Y. 2007) ("The [a]mended [c]omplaint does not allege other similar instances of malicious prosecution that could raise an inference that the City maintains a policy or custom of deliberate indifference to these types of unconstitutional deprivations."), *aff'd*, 293 F. App'x 831 (2d Cir. 2008).[5]  He also refers to "numerous civil

---

[5] Plaintiff cites a single case, *People v. Bozella*, 901 N.Y.S.2d 908 (Table) (Cty. Ct. 2009), in support of his assertion that there have been "numerous credible allegations" and "numerous civil lawsuits" involving *Brady* violations, (*see* Am. Compl. 8); however, that case did not involve any municipal Defendant in this Action, and therefore cannot be used to establish that the municipal entities Plaintiff brings his claims against maintained unconstitutional policies, and in any event is insufficient to establish a policy or custom.  *See Jones v. Town of East Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (finding that "two instances, or at the most three, over a period of several years in which a small number of officers abused the rights" of citizens "fell far short of showing a policy, custom, or usage"); *see also Greene v. City of New York*, 742 F. App'x 532, 537 (2d Cir. 2018) (finding that "[t]he two prior violations [the plaintiff] cite[d]" to establish

lawsuits," but identifies none.  *See Doe ex rel. Boyd v. Smereczynsky*, No. 16-CV-394, 2017 WL

1100426, at *3 (D. Conn. Mar. 23, 2017) ("[M]erely alleging that suits and complaints were

filed—without more—is insufficient to support a claim of a pattern of similar constitutional

violations." (citations and quotation marks omitted)); *Walker v. City of New York*, No. 14-CV-

808, 2015 WL 4254026, at *8 (S.D.N.Y. July 14, 2015) (finding plaintiff had failed to allege a

"custom by merely listing the names of numerous lawsuits, without indicating whether they

resulted in a finding of liability against the Officers or the City or providing any specific details

about the cases"); *see also Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22–23 (2d Cir. 2012)

("[C]itation to various lawsuits involving inmate claims for the excessive use of force is not

probative of the existence of an underlying policy.").  In the absence of any specific factual

allegations that could raise an inference that a municipal policy or custom caused the violation of

Plaintiff's constitutional rights, his claims against Beacon and Dutchess are dismissed.

## 2.  Due Process Claim

Plaintiff's remaining claim alleges that Horner, who was appointed to represent Plaintiff

in his appeal, neglected to perfect his appeal for several years, resulting in Plaintiff's prolonged

incarceration.  (Am. Compl. 10.)  Horner argues that this claim fails because he was not acting

under color of state law.  (Horner Mem. 8–9.)  In response to this argument, Plaintiff argues that

Horner was "influenced" by the state via a clerk in the New York State Appellate Division.

(Am. Compl. 10; *see also* Pl.'s Mem. 1.)

It is well-established that public defenders and court-appointed lawyers are not state

actors for purposes of § 1983 claims.  *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981)

---

deliberate indifference under Monell "[were] not enough to sustain his burden" (italics omitted)
(citing *Jones*, 691 F.3d at 85)).

("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." (citation omitted)); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (noting that the plaintiff's lawyers were "not state actors" and thus not liable in an action under § 1983 unless "conspiring with a state official . . . acting under color of state law" (citation, alterations, and quotation marks omitted)); *Harrison v. New York*, 95 F. Supp. 3d 293, 328 (E.D.N.Y. 2015) (holding that "public defenders[,] . . . court-appointed counsel[,] and private attorneys do not act under the color of state law merely by virtue of their position" (citation and quotation marks omitted)); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[N]either public defenders . . . nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position."). Plaintiff unmistakably bases his claim on Horner's performance of "a lawyer's traditional functions as counsel" during his criminal appeal. *Dodson*, 454 U.S. at 325; *see also Schiff v. Suffolk Cty. Police Dep't*, No. 12-CV-1410, 2015 WL 1774704, at *8 (E.D.N.Y. Apr. 20, 2015) (holding that the plaintiff failed to state a claim under § 1983 where "the allegations . . . all relate to acts the [attorney] allegedly committed while engaged in representing [the] plaintiff"); *Murdock v. Legal Aid Soc'y*, No. 14-CV-508, 2015 WL 94245, at *2 (E.D.N.Y. Jan. 6, 2015) (holding that the "[p]laintiff's [§] 1983 claims against his former defense attorneys fail as a matter of law because they are not state actors").

Construed liberally, Plaintiff's allegation that Horner was "influenced" by a state actor was included to support an inference that Horner conspired with a state official to prevent Plaintiff's appeal from being filed in a timely manner. (Am. Compl. 10.) Plaintiff's single, conclusory allegation that Horner was "influenced" by a state actor, absent any factual allegations supporting this conclusion, is insufficient to establish that Horner conspired with a

state actor.  Where a plaintiff alleges that a private entity conspired with a state actor, "the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act," and was "a willful participant in joint activity with the State or its agents." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (citations and quotation marks omitted)); *see also Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983." (citation omitted)).  "Critically absent from the [Amended] Complaint are any specific facts identifying a 'willful collaboration' between [Horner] and [Agostino] to deny Plaintiff's constitutional rights . . . or [an] 'agreement' between the[m] . . . forming the conspiracy." *Harrison*, 95 F. Supp. 3d at 325 (citations omitted).

Accordingly, the Court finds that Plaintiff has failed to plead that Horner conspired with a state actor, and his § 1983 claim against Horner is dismissed.  *See Caballero v. Shayna*, No. 18-CV-1627, 2019 WL 2491717, at *3 (E.D.N.Y. June 14, 2019) (dismissing conspiracy claim where "none of the[] allegations . . . show[ed] that [some defendants] affirmatively agreed to engage in unconstitutional conduct with [other defendants]" or "shared a common unlawful goal" (citations and quotation marks omitted)); *Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *5 (S.D.N.Y. Aug. 8, 2018) (dismissing conspiracy claim where the plaintiff did "not allege an agreement . . . to violate [the plaintiff's] rights"); *Demosthene v. City of New York*, No. 14-CV-816, 2015 WL 5093116, at *7 (E.D.N.Y. June 26, 2015) (dismissing conspiracy claim where the "allegations [did] not permit a reasonable inference that [the police officer

defendants] ever agreed that they would work together toward a collective goal of violating [the plaintiff's] rights" (citation omitted)), *adopted by* 2015 WL 5093164 (E.D.N.Y. Aug. 28, 2015).[6]

## III. Conclusion

For the foregoing reasons, Defendants' Motions To Dismiss are granted. Because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. *See Terry v. Inc. Vill. Of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile" (citation omitted)). Should Plaintiff choose to file a second amended complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein. The second amended complaint will replace, not supplement, the complaint currently before the Court. It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider. The Court will not consider factual allegations raised in supplemental declarations, affidavits, or letters. If Plaintiff fails to abide by the 30-day deadline, this action could be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending Motions, (Dkt. Nos. 45, 51, 61, 66), and to mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: September **10**, 2019
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[6] Because Plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over any state law claims that Plaintiff intended to assert against Defendants. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (noting that "if the federal claims [in an action] are dismissed before trial . . . the state claims should be dismissed as well" (citation omitted)).