UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAKIM PAULIN,

                                        Plaintiff,

                        v.

CASE AGENT DETECTIVE RICHARD
SASSI, JR.,[1]

                                        Defendant.

No. 17-CV-5105 (KMK)

OPINION AND ORDER

Appearances:

Rakim K. Paulin
Gouverneur, NY
*Pro Se Plaintiff*

Seamus Patrick Weir, Esq.
Catania, Mahon, Milligram & Rider, PLLC
Newburgh, NY
*Counsel for Defendant Richard Sassi*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Rakim K. Paulin ("Plaintiff"), currently incarcerated at Gouverneur

Correctional Facility, brings this Action, pursuant to 42 U.S.C. § 1983, against Case Agent

Detective Richard Sassi, Jr. ("Sassi" or "Defendant").  (*See* Third Am. Compl. (Dkt. No. 136).)

In his Third Amended Complaint, Plaintiff alleges that Defendant deprived him of certain

constitutional rights in connection with the investigation of various drug charges brought against

Plaintiff and the subsequent related trial.  Specifically, Plaintiff alleges that he was denied a fair

trial based on the alleged existence of "manufactured false evidence" in Defendant's controlled

---

[1] The Clerk of Court is respectfully directed to amend the caption as Sassi is the only
remaining Defendant.

buy reports and that Defendant failed to disclose "exculpatory impeachment evidence" that Plaintiff requested in advance of his criminal trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  (*Id.* at 2.)

Before the Court is Defendant's Motion To Dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Sassi Not. of Mot. (Dkt. No. 140).) For the following reasons, Defendant's Motion is denied.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Third Amended Complaint and are taken as true for the purpose of resolving the instant Motion.

1.  *Brady* Violations

In 2010, Plaintiff was the subject of an investigation by the Beacon Police Department into suspected illegal narcotics trafficking.  After several controlled buys of contraband by a confidential informant ("CI"), a search warrant was executed on Plaintiff's residence on April 7, 2010 where he was arrested by Sassi.  (Third Am. Compl. 3.)  On April 11, 2011, Plaintiff was charged and convicted by a jury of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the fifth degree.  (*Id.*)  Plaintiff was sentenced to 24 years of incarceration, with five years of post-release supervision.  (*Id.*)

Prior to his trial, Plaintiff made certain discovery requests, including: (1) the criminal records of the CI involved in his case from 2005 to 2011; (2) police blotters on how Sassi's investigation into Plaintiff started; (3) investigative buy reports from the Dutchess Drug Task Force; and (4) Beacon and Dutchess's policies and procedures on Confidential Informants (the

"CI Policies and Procedures"). (*Id.*) Initially, the District Attorney's Office ("DA's Office") disclosed the CI's criminal records from only 1984 through 2004. Additionally, with respect to the police blotters, the DA's Office said, "none exist and that [the DA's Office was] not in possession of [any]." (*Id.*) Plaintiff states that a copy of Sassi's buy reports were not given to him nor were any of the CI Policies and Procedures turned over. (*Id.* at 3-4.) In his Third Amended Complaint, Plaintiff repeatedly alleges that Sassi "intentionally withheld and failed to disclose" exculpatory evidence. (*Id.* at 12.) Plaintiff claims that Sassi inserted false evidence in the buy reports used against him at trial. (*Id.* at 2.) Plaintiff states that the evidence was manufactured to "create the appearance of [P]laintiff allegedly being the person selling drugs" in Sassi's buy reports. (*Id.* at 9.)[2] Plaintiff explains that Sassi's criminal record "could have been used by [P]laintiff to effectively cross examine defendant Sassi." (*Id.* at 12.) Plaintiff contends that the criminal records of the CI would have been used to "diminish the [CI's] character, and show his unwillingness to follow laws." (*Id.*)

Plaintiff's trial lasted from March 23, 2011 to April 11, 2011, and he was convicted by a jury. (*Id.* at 4.) While incarcerated, Plaintiff filed several Freedom of Information Law ("FOIL") requests to retrieve the documents that the DA's Office allegedly did not turn over in discovery, but the requests were either denied or received no response. (*Id.* at 5.) Plaintiff appealed the denial against Dutchess Drug Task Force in an Article 78 proceeding, and the request was granted on July 7, 2014. (*Id.*) Subsequently, pursuant to the lower court's order,

---

[2] Plaintiff highlights that Sassi was convicted in a jury trial and fired for "Falsely Reporting Catastrophe or Emergency to Official Agency in the Third Degree." Plaintiff also points out that the CI involved in this case stopped working with the New York State Police amid allegations of an opiate addiction and that he provided information to a known drug dealer. This information was confirmed in a letter from the District Attorney of Dutchess County. (*See* Third Am. Compl. Ex. C.)

Dutchess released "Sassi['s] buy reports, the "CI" criminal history records for 2005 to 2011, [and] . . . Beacon['s] policy and procedures on the use of "CI[s]." (*Id.* at 5-6.)  However, Plaintiff received the "police blotter" from the DA's Office that was part of his same request years later on September 3, 2016. (*Id.* at 6.)

Meanwhile, Plaintiff separately appealed his conviction and the Second Department reversed, holding that the trial court erred in denying Plaintiff's request to proceed pro se. *See People v. Paulin*, 140 A.D. 3d 985 (N.Y. App. Div. 2016).  On October 27, 2016, Plaintiff pleaded guilty to possession of a controlled substance in the fifth degree, and was sentenced to two years imprisonment, with one year of post-release supervision. (Third Am. Compl. 6.)

B. Procedural Background

Plaintiff initiated this Action on July 6, 2017 against County of Dutchess ("Dutchess"), City of Beacon ("Beacon"), Sassi, Appellate Clerk Aprilane Agostino ("Agostino"), Appellate Attorney Terry D. Horner ("Horner"), and Records Coordinator Frank Tasciotti ("Tasciotti") of the Dutchess Drug Task Force (collectively "Defendants"). (Compl. (Dkt. No. 2).)[3]  His request to proceed in forma pauperis ("IFP") was granted on October 16, 2017. (Dkt. No. 9.)  All Defendants moved to dismiss the original complaint. (*See* Dkt. Nos. 45, 51, 61, and 66.)

Upon reviewing the Defendants' Motions, Plaintiff requested leave to file an amended complaint. (Dkt. No. 58.)  The Court granted Plaintiff leave to amend and Plaintiff later filed his First Amended Complaint on September 24, 2018. (*See* Dkt. No. 60.)[4]  On October 17, 2018, Defendants filed supplemental briefings to address new allegations in the First Amended

[3] The Court dismissed Defendant Agostino from this on June 13, 2018. (*See* Order of Service (Dkt. No. 17).)

[4] Given that the First Amended Complaint failed to name Tasciotti and did not include any claims against him, the Court dismissed him from the case on the same day.

4

Complaint.  (*See* Dkt. Nos. 79, 80, 82, 85.)  Plaintiff filed his response to the motions and supplemental briefs on November 26, 2018 and Defendants replied.  (*See* Dkt. Nos. 94, 96, 98, 99, 101.)  On September 10, 2019, the Court issued an Opinion and Order granting Defendants' Motions To Dismiss and dismissed the First Amended Complaint against all Defendants without prejudice.  (*See* Dkt. No. 111.)  In that Order, the Court afforded Plaintiff 30 days to file a Second Amended Complaint to address the deficiencies in his pleadings.  (*See id.*)

Plaintiff later filed his Second Amended Complaint on November 14, 2019.  (*See* Dkt. No. 114.)  Defendant Sassi then wrote a pre-motion letter apprising the Court of his intention to move to dismiss Plaintiff's Second Amended Complaint and to request a briefing schedule.  (*See* Dkt. No. 121.)  On December 12, 2019, Plaintiff was directed by the Court to respond to a letter filed by Defendant Horner which requested confirmation of Plaintiff's intention not to include him as a Defendant in the Second Amended Complaint.  (*See* Dkt. Nos. 116, 122.)  In response, Plaintiff filed a notice of dismissal withdrawing all claims against Horner, Beacon, and Dutchess on December 22, 2019.  (*See* Dkt. No. 125.)  The Court then directed Plaintiff to file a Third Amended Complaint by January 22, 2020.  (*See* Dkt. No. 128.)  Plaintiff filed his Third Amended Complaint on January 29, 2020.  (*See* Dkt. No. 136.)  The Third Amended Complaint alleges two causes of action, against Sassi, the only remaining defendant.  First, Plaintiff alleges that he was denied a fair trial because Sassi allegedly manufactured false evidence during the related investigation and subsequent trial.  Second, Plaintiff alleges that Sassi failed to provide the prosecution with exculpatory evidence prior to Plaintiff's trial, in violation of *Brady*. Plaintiff alleges that he only received this exculpatory evidence years later through the FOIL process after his previous requests were denied or not responded to.  On February 13, 2020, Sassi filed a letter to advise the Court of his intention to submit a Motion To Dismiss and requested a

briefing schedule.  (*See* Dkt. No. 138.)  On March 20, 2020 Sassi filed his Motion To Dismiss.

(*See* Dkt. No. 140.)  On May 1 and May 4, 2020, Plaintiff filed three affirmations in opposition

to the Motion To Dismiss.  (*See* Dkt. Nos. 145–147.)  On May 11, 2020, Sassi filed his reply in

support of his Motion to Dismiss.  (*See* Dkt. No. 148.)

<u>II.  Discussion</u>

<u>A.  Standard of Review</u>

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement."  *Id.*  (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations

in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to

relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims

across the line from conceivable to plausible, [the] complaint must be dismissed," *id.*; *see also*

*Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.  But where the well-pleaded facts do not permit the court to infer more than

6

the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendant's Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted). Rule 8 does not unlock the doors of discovery for "a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (2009).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). However, when the complaint is drafted by a pro se plaintiff, the Court may

consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

    B.  Analysis

        1.  *Brady* Violations

The crux of Plaintiff's claim is that Sassi withheld exculpatory evidence in his criminal trial in violation of *Brady* and that he was wrongfully convicted as a result.  (*See* Third Am. Compl. 7-15.)  Under *Brady*, the Government is required to disclose all material evidence that is favorable to a criminal defendant.  *Brady*, 373 U.S. at 87.  A *Brady* violation can provide the basis for a § 1983 claim.  *See Poventud v. City of New York*, 750 F. 3d 121, 132–33 (2d Cir. 2014).  There are three elements to a *Brady* violation: first, the evidence must be favorable to the defendant "either because it is exculpatory, or because it is impeaching"; second, the "evidence must have been suppressed by the prosecution, either willfully or inadvertently;" and third, "prejudice [to the defense] must have ensued."  *United States v. Douglas*, 525 F.3d 225, 245 (2d Cir. 2008) (alteration omitted) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).  The duty to identify and disclose *Brady* material generally is the responsibility of the prosecutor, but an individual police officer may be held liable for a *Brady* violation if the officer intentionally hides exculpatory evidence within the officer's exclusive possession from the prosecution.  *See, e.g.*, *Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016); *Valentin v. City of Rochester*, No. 11-CV-6238, 2018 WL 5281799, at *13 (W.D.N.Y. Oct. 24, 2018) ("[F]or purposes of § 1983, a police officer cannot be said to have 'suppressed' *Brady* material that is

not in his sole possession, and which is readily available to the prosecutor."). Prosecutors, "who possess the requisite legal acumen," are "charged with the task of determining which evidence constitutes *Brady* material that must be disclosed." *Walker v. City of New York*, 974 F.2d 293, 299 (2nd Cir. 1992).

a.  Exclusive Possession

Here, Plaintiff has plausibly alleged a potential *Brady* violation against Sassi because the requested exculpatory materials were arguably in Sassi's exclusive possession. (*See* Third Am. Compl. 3.)[5]  Specifically, Plaintiff charges that the requested records "were not forwarded to the Dutchess County [DA's] Office by [D]efendant Sassi who was in possession of said records." (*Id.* at 4.)  Plaintiff further contends that Sassi's conduct "was intentional when he deliberately withheld *Brady* records from the District Attorney and the defense" and construed liberally, as is required with pro se plaintiffs, may form the basis of a § 1983 claim. (Pl.'s Affirmation, Dkt. Nos. 145-47); *see also Iqbal*, 556 U.S. at 678.  Plaintiff also avers that the CI's criminal records, Sassi's police blotters, and Sassi's buy reports that Plaintiff requested ahead of his criminal trial were in Sassi's exclusive possession. (Dkt. Nos. 145–47 at 3, 5, 11; *see also* Third Am. Compl. 4.)[6, 7]  Therefore, the Court concludes that Plaintiff has alleged a cognizable § 1983 claim.

---

[5] This is with the exception of the Beacon and Dutchess CI Policies and Procedures which were not in the exclusive possession of Sassi and therefore those documents cannot be the basis of a *Brady* violation.

[6] Although Plaintiff does not use the exact words "exclusive possession" he does allude to the fact that only Sassi possessed these records and withheld them from the prosecution.  As such, the Court liberally construes these facts in Plaintiff's favor. (*See* Third Am. Compl.; *see also* Dkt. Nos. 145–47.)

[7] Plaintiff filed an "Affirmation in Response to Defendant[']s Motion to Dismiss Plaintiff[']s Third Amended Complaint" three times on the docket which are identical.

b.  Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics omitted).  In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Further, claims "sounding in negligence" do not give rise to the level of constitutional deprivation that is a predicate for § 1983 liability.  *See Koulkina v. City of New York*, 559 F. Supp. 2d 300, 316 (S.D.N.Y. 2008).

Plaintiff has offered enough factual allegations to plausibly claim that Sassi acted intentionally and/or was personally involved in alleged suppression of evidence.  In his Third Amended Complaint, Plaintiff notes that the DA's Office "only disclosed [the CI's] criminal records from 1984 to 2004," that Beacon falsely claimed that the requested "police blotter" reports did not exist, and that "a copy of Defendant Sassi['s] buy reports . . . were not given to [P]laintiff by his defense counsel."  (*See* Third Am. Compl.3–4.)  Read in the light most favorable to him, Plaintiff has plausibly alleged wrongdoing by Sassi who did not turn over the requested materials in his constructive or actual possession to the DA's Office during his

investigation and related trial.  (*Id.* at 4.)  Accordingly, Plaintiff has nudged his *Brady* claim from conceivable to plausible based on the allegations in his Third Amended Complaint, given that the criminal records of the CI, the police blotters of Sassi, and Sassi's buy reports were not turned over to Plaintiff until many years after his trial and as he alleges may have been exculpatory to him.[8]

### 2.  Denial of a Fair Trial

"A fair trial claim is a civil claim for violations of a criminal defendant's Fourteenth Amendment due process rights."  *Fappiano*, 640 F. App'x at 118.  "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial."  *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997).  "[S]uch an unconscionable action is redressable in an action for damages under . . . § 1983."  *Id.*  The Second Circuit restricts fair trial claims based on fabrication of information to cases in which "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."  *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).

---

[8] However, to the extent that Plaintiff again seeks to allege that Sassi violated Beacon's CI Policies and Procedures, he cannot establish a constitutional violation on such a claim, because as this Court previously noted, allegations that a state actor "violated New York regulations or its own policies . . . [are] not actionable under [§] 1983."  *Victory v. Pataki*, 632 F. App'x 41, 44 (2d Cir. 2016) (citing *Graziano v. Pataki*, 689 F.3d 110, 116 (2d Cir. 2012), and *Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985)); *see also Bowen v. County of Westchester*, 706 F. Supp. 2d 475, 490 (S.D.N.Y. 2010) ("[E]ven if Defendant[] violated . . . departmental policy, [he] did not violate the Constitution."); *Simpkins v. Bellevue Hosp.*, 832 F. Supp. 69, 73 n.2 (S.D.N.Y. 1993) (noting that a state actor's "violation of [its] own policy would not necessarily give rise to a [constitutional] claim").

Here, Plaintiff alleges that Sassi, as the primary investigating official in his case, "manufactured false evidence" in his buy reports and police blotter, which were used at Plaintiff's trial and likely influenced the jury's decision to convict.  (Third Am. Compl. 4.)  Plaintiff outlines the alleged false information in Sassi's buy reports.  (*Id.* at 5–10.)  In addition, Plaintiff points out that the police blotter that started the investigation into Plaintiff was not turned over to Dutchess to provide to Plaintiff before trial, despite his repeated discovery requests.  (*Id.* at 13.)  Plaintiff explains that the absence of this evidence denied him the right to "mount a defense, to take the witness stand, and counter defendant[] Sassi['s] key testimony where he gave the appearance that he started his investigation into plaintiff on solid footing." (*Id.* at 13–14.)  Plaintiff further alleges that Sassi's police blotter belies Sassi's claims that "[P]laintiff did not know the person in the initial blotter report . . . the person in the other blotter report never witnessed plaintiff selling any illegal drugs and also lived an hour away from [P]laintiff" and that "Plaintiff also never met this person."  (*Id.* at 14.)  Plaintiff characterizes the evidence against him as "not overwhelming" and that he "could have effectively used the exculpatory impeachment records at his trial."  (*Id.*)  Plaintiff claims that withholding of such evidence "prejudiced" him and that it was "highly likely that the jury would have reached a different result absent Sassi['s] errors.  (*Id.*)  Further, Plaintiff highlights that as a result of the withheld evidence, he did not have an opportunity to fully cross examine witnesses because those documents were not disclosed to him prior to trial.  (*Id.*)  Finally, Plaintiff alleges that this is not Sassi's first time manufacturing false evidence and that the CI was forced to retire from the New York State Police because he used opiates on the job and provided information to a known drug dealer.  (*See* Dkt. Nos. 145–47 at 9; *see also* Third Am. Compl. 11, Ex. C.)  Plaintiff's claim is only bolstered by this evidence.  Given that Plaintiff has adequately alleged that Sassi,

the investigating official, falsified information that could have likely influenced the jury's verdict and failed to turn over this evidence to prosecutors, Plaintiff's fair trial claim survives the Motion.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is denied.

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 140), and to mail a copy of this Opinion to Plaintiff.  The Court will hold a Status Conference on February 3, 2021 at 10:30am.

SO ORDERED.

Dated: January 14, 2021
       White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

13